UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY GANTT, JR.,

                              Plaintiff,

        -v-

MICHAEL FERRARA, POLICE CHIEF
CITY OF NEWBURGH; ERIC
HENDERSON, POLICE OFFICER CITY
OF NEWBURGH; MIKE PITT, POLICE
OFFICER CITY OF NEWBURGH; KEVIN
LAHAR, POLICE OFFICER CITY OF
NEWBURGH; JOSEPH CERONE, POLICE
OFFICER CITY OF NEWBURGH;
WEAVER, POLICE SERGEANT CITY OF
NEWBURGH; CITY OF NEWBURGH,

                              Defendants.

No. 15-CV-7661 (KMK)

ORDER & OPINION

Appearances:

Larry Gantt, Jr.
Dannemora, NY
*Pro Se Plaintiff*

Kimberly H. Lee, Esq.
David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Larry Gantt, Jr. ("Gantt" or "Plaintiff"), currently an inmate at Clinton Correctional

Facility ("Clinton"), brings this pro se action under 42 U.S.C. § 1983, claiming violations of his

Eighth and Fourteenth Amendment rights by the City of Newburgh (the "City"), Police Chief

Michael Ferrara ("Ferrara"), Officer Eric Henderson ("Henderson"), Officer Mike Pitt ("Pitt"),

Officer Kevin Lahar ("Lahar"), Officer Joseph Cerone ("Cerone"), and Police Sergeant Weaver

("Weaver," and collectively, "Defendants").[1]  Plaintiff alleges that Defendants violated his constitutional rights by "fail[ing] to protect . . . [P]laintiff as required by law" when "several unknown assailants" and Defendant Henderson assaulted him.  (Compl. ¶¶ 23, 24 (Dkt. No. 2).)  Before the Court is Defendants' Motion To Dismiss (the "Motion").  For the reasons to follow, Defendants' Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are assumed to be true for the purpose of deciding the Motion.

Plaintiff alleges that on November 3, 2012, he was at the DryDock club in the City of Newburgh with his brother and a friend when a fight broke out between several patrons.  (*Id.* ¶¶ 10–11.)  The group was preparing to leave the club by car when Plaintiff's brother exited the car and returned to the club to locate a friend.  (*Id.* ¶¶ 12–13.)  Plaintiff was en route to his home, but decided to return to the club to find his brother.  (*Id.* ¶ 14.)  Upon returning to the club, Plaintiff believed he spotted his brother in a large crowd.  (*Id.*)  While walking toward the crowd, Plaintiff was struck in the head and subsequently attacked by several unknown individuals.  (*Id.* ¶¶ 14–15.)  Plaintiff attempted to flee, but was unable to do so.  (*Id.* ¶ 16.)  The assailants stabbed Plaintiff, knocked him to the ground, and kicked him until he was unconscious.  (*Id.* ¶ 17.)

Plaintiff asserts that during the attack, Defendants Henderson, Pitt, and Lahar watched the assault, but failed to offer assistance to Plaintiff.  (*Id.* ¶ 18.)  Plaintiff also avers that

_____

[1] Pursuant to an Order issued by the Court on October 13, 2015, the City of Newburgh was substituted as a defendant for the City of Newburgh Police Department.  (*See* Order of Service (Dkt. No. 6).)

Defendant Henderson "straddle[ed] . . . sh[ook] and str[uck]" Plaintiff while he was unconscious, (*id.* ¶ 21), and that Defendants Pitt, Lahar, Weaver, and Cerone "stood by and did nothing to intervene when [D]efendant Eric Henderson[] was assaulting [P]laintiff," (*id.* ¶ 23). Plaintiff further asserts that Defendants Pitt and Cerone "dragged [Plaintiff] on his stomach in the street" and told Plaintiff "he was going to die." (*Id.* ¶ 22.) Finally, Plaintiff alleges that Defendant Ferrara, as Chief of Police, "failed to properly train and supervise" the other Defendants, resulting in Plaintiff's serious physical injuries. (*Id.* ¶ 25.)

Plaintiff seeks a declaratory judgment that "[D]efendants' acts, polic[ies] and/or practice[s] . . . violated [P]laintiff's rights under the Constitution" and a permanent injunction prohibiting Defendants from engaging in the conduct described in the Complaint. (*Id.* ¶¶ 35–36.) Additionally, Plaintiff requests compensatory and exemplary damages in the amount of 20 million dollars, as well as payment for "any and all future medical expenses accrued by [P]laintiff for the injuries [P]laintiff suffered" and the cost of this Action, including reasonable attorney's fees. (*Id.* at 8.)

B. Procedural History

On September 29, 2015, Plaintiff filed his Complaint. (Dkt. No. 2.) On October 6, 2015, Plaintiff's request to proceed in forma pauperis was granted. (Dkt. No. 4.) On October 13, 2015, the Court issued an Order of Service, dismissing Plaintiff's claims against the City of Newburgh Police Department and substituting the City of Newburgh as a defendant. (Dkt. No. 6.)

On March 21, 2016, Defendants filed the instant Motion and accompanying memorandum of law. (Dkt. Nos. 28, 32.) Defendants attached to their Motion excerpts of transcripts from Plaintiff's criminal trial regarding the events of November 3, 2012, including the jury verdict, (Aff. of Kimberly H. Lee, Esq. ("Lee Aff.") Ex. B (Dkt. No. 29)), Plaintiff's

3

testimony in his defense, (Lee Aff. Ex. C), and the charge to the jury, (Lee Aff. Ex. D).

Defendants also served Plaintiff with a notice pursuant to Local Civil Rule 12.1.  (Dkt. No. 31.)

In a letter to the Court filed April 5, 2016, Plaintiff requested that the Court order

Defendants to produce the complete transcript of Plaintiff's related criminal case.  (Dkt. No. 35.)

Throughout April and May of 2016, the Parties sent various correspondence to the Court

regarding the voluminous transcripts and Plaintiff's need for the transcripts in responding to

Defendants' Motion.  (*See, e.g.*, Dkt. Nos. 36–37, 39, 41–42.)[2]  On May 23, 2016, the Court

denied Plaintiff's request to order Defendants to produce the transcripts.  (Dkt. No. 44.)

On July 6, 2016, Plaintiff filed his response to Defendants' Motion, (Dkt. No. 49), and on

July 12, 2016, Defendants filed their reply, (Dkt. No. 51).

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(5), and 12(b)(6).  (*See* Defs.' Mem. of Law in Supp. of Dismissal

("Defs.' Mem.") 3–4 (Dkt. No. 32).)

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical."

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn.

June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340,

2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).

"In deciding both types of motions, the Court must accept all factual allegations in the complaint

---

[2] On April 20, 2016, Plaintiff filed a Motion for Appointment of Counsel, (Dkt. No. 38),
which the Court denied without prejudice in an Order dated November 30, 2016, (Dkt. No. 54).

as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)).  This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

    1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*,

No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same).  Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action."  *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

## 2.  Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks

omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)

(citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).   In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).   However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### 3.  Rule 12(b)(5)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S.

422, 430–31 (2007).  Valid service is a prerequisite for a federal court to assert personal

jurisdiction over a claim.  *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104

(1987).  "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden

of proving adequate service."  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)

(alteration and internal quotation marks omitted); *see also Tomney v. Int'l Ctr. for the Disabled*,

No. 02-CV-2461, 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003) ("Once a defendant raises a

challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its

adequacy." (internal quotation marks omitted)).

In deciding a Rule 12(b)(5) motion, the Court "must look to matters outside the

complaint to determine what steps, if any, the plaintiff took to effect service."  *C3 Media &*

*Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (internal

quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680,

2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to

dismiss, consider affidavits and documents submitted by the parties without converting the

motion into one for summary judgment under Rule 56." (alteration and internal quotation marks

omitted)).

 B.  Analysis

  1.  Claims Against Defendant Ferrara

Defendants move to dismiss the claims against Defendant Ferrara, former Police Chief

for the City Newburgh Police Department, for failure to serve, pursuant to Federal Rules of Civil

Procedure 4(m) and 12(b)(5), and alternatively, failure to state a claim.  (*See* Defs.' Mem. 3–4.)

The Court considers each in turn.

Rule 4(m) requires a plaintiff to effect proper service on a defendant within 90 days of

the filing of the complaint.  *See* Fed. R. Civ. P. 4(m).[3]  If a plaintiff fails to do so, the Court

"must dismiss the action without prejudice against [the] defendant or order that service be made

within a specified time."  *Id.*  However, if the plaintiff has demonstrated good cause for a failure

to effect service, the court *must* extend the time to effect service.  *Id.*; *see also Blessinger v.*

*United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997) (noting that if a plaintiff demonstrates good

cause, "the extension [to serve] is mandatory").  To determine whether a plaintiff has

demonstrated good cause, "[c]ourts generally consider three factors . . . : (1) whether the delay

resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2)

prejudice to the defendant, and (3) whether the plaintiff has moved for an enlargement of time to

effect service under Rule 6(b) of the Federal Rules of Civil Procedure."  *Echevarria v. Dep't of*

*Corr. Servs.*, 48 F. Supp. 2d 388, 392 (S.D.N.Y. 1999).

Plaintiff does not contest that Defendant Ferrara has not been served with the Complaint

and that the time to do so has expired.  Rather, Plaintiff asserts that "[a]s a pro se litigant, [he]

should be granted special leniency regarding procedural matters."  (Pl.'s Resp. to Def[s.'] Mot.

To Dismiss ("Pl.'s Resp.") 6–7 (Dkt. No. 49).)  Although the "special solicitude afforded to pro

se civil rights litigants does not give them license to violate the Federal Rules of Civil

Procedure," *Self v. LaValley*, No. 10-CV-1463, 2013 WL 1294448, at *3 (N.D.N.Y. Mar. 27,

2013) (italics omitted), the Court has an obligation "to make reasonable allowances to protect

pro se litigants from inadvertent forfeiture of important rights because of their lack of legal

---

[3] Although not relevant for purposes of this Opinion, the Court notes that, at the time
Plaintiff filed this Action in September 2015, the former 120-day period provided for by Rule
4(m) was in effect.  *See, e.g.*, *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL
3636672, at *9 (S.D.N.Y. June 29, 2016) ("[U]nder Federal Rule of Civil Procedure 4(m), prior
to its December 2015 amendment, a plaintiff was required to serve a defendant with a summons
and a copy of the complaint within 120 days after the complaint was filed.").

training," *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (italics omitted).  Moreover, the

Second Circuit has a "clearly expressed preference that litigation disputes be resolved on the

merits."  *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 346 (S.D.N.Y. 1996); *see also Cody v.

Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (same); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d

Cir. 1993) (same).

Plaintiff asserts that he "made several attempts to locate [D]efendant [Ferrara]," (Pl.'s

Resp. 7), and attaches copies of two letters sent from Michelle Kelson, corporation counsel for

Defendants, in response to Plaintiff's inquiries regarding locating Defendants Ferrara and

Henderson, (*see* Pl.'s Resp. Ex. B).[4]  One letter response, dated January 19, 2016, informed

Plaintiff that corporation counsel was "unable to provide records with the current address of

Michael Ferrara or Eric Henderson."  (*Id.* at 2.)[5]  Of additional importance here is Plaintiff's

letter to the Court, dated December 16, 2015, informing the Court that the "notice of service

forms were returned to [him]" and inquiring about next steps to execute service upon the

unserved Defendants.  (Letter from Plaintiff to Court (Dec. 16, 2015) (Dkt. No. 15).)  The Court

did not issue an order in response to Plaintiff's letter.

While Plaintiff did not explicitly move for "an enlargement of time to effect service,"

*Echevarria*, 48 F. Supp. 2d at 392, the Court now liberally construes Plaintiff's December 16,

2015 letter as requesting such an extension.  As Plaintiff expended a reasonable effort to effect

service and Defendants do not allege any prejudice to Defendant Ferrara, the Court finds that

Plaintiff has demonstrated good cause for his failure to serve Defendant Ferrara.  Accordingly,

---

[4] Plaintiff does not include the original letters sent to corporation counsel and provides only the letters received in response.  One response, dated December 21, 2015, advises Plaintiff that counsel for the City could not provide legal advice to Plaintiff.  (Pl.'s Resp. Ex. B, at 1.)

[5] Plaintiff successfully served Defendant Henderson on April 26, 2016.  (Dkt. No. 40.)

Plaintiff will be provided additional time to effect service of the Complaint on Defendant

Ferrara.  Defendants are hereby directed to provide the Court with a service address for

Defendant Ferrara.  Upon receipt of the address, the Court will issue an Order of Service.[6]

### 2.  *Monell* Liability

Defendants argue that any claims against the City of Newburgh should be dismissed

because Plaintiff has failed to satisfy the requirements of *Monell v. Department of Social*

*Services of City of New York*, 436 U.S. 658 (1978).  (*See* Defs.' Mem. 4–7.)[7]

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior

theory."  *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of East Haven*, 691

F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat

superior basis for the tort of its employee" (italics omitted)).  Rather, to prevail on a § 1983 claim

---

[6] While the Court declines to dismiss Plaintiff's claims against Ferrara for failure to serve pursuant to Rule 12(b)(5), Defendants further contend that Plaintiff's claims against Ferrara should be dismissed for failure to allege personal involvement in the events of November 3, 2012.  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing § 1983 claims where the complaint contained "no allegations whatsoever indicating that [the defendants] were personally involved in the purported violations" of the plaintiff's constitutional rights); *Robinson v. City of New York*, No. 10-CV-4947, 2011 WL 318093, at *3 (E.D.N.Y. Jan. 31, 2011) (noting that a plaintiff "must name individual defendants who were personally involved in the wrongdoing or misconduct" in order to state a claim under § 1983), *reconsideration denied*, 2011 WL 795734 (E.D.N.Y. Mar. 1, 2011).  If Plaintiff chooses to file an Amended Complaint, he should address Defendant Ferrara's personal involvement in the alleged deprivation of Plaintiff's constitutional rights.

[7] The Court notes that Plaintiff's Complaint does not explicitly assert any allegations against the City of Newburgh (or the City of Newburgh Police Department), (*see generally* Compl.), but rather directs claims under *Monell* against Defendant Ferrara, (*see id.* ¶ 25 ("Defendant . . . Ferrara . . . failed to properly train and supervise [D]efendants[] Henderson[,] Pitt[,] Lahar[,] Cerone[,] and Weaver . . .").  To the extent Plaintiff's *Monell* claims against Ferrara can be construed as asserting such claims against the City, the Court addresses the merits of those claims and the defenses raised in the Motion.

against a municipal employer, Plaintiff must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Hunter v. City of New York*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (internal quotation marks omitted)); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a

plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

### a.  Policy or Custom

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality."  *Tieman*, 2015 WL 1379652, at *18 (internal quotation marks omitted); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  There are at least two circumstances that courts have expressly identified as constituting a municipal policy:  "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken."  *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).  "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

According to the Complaint, Plaintiff seeks a "[d]eclaratory judgment that [D]efendants' acts, polic[ies] and/or practice[s] set forth [in the Complaint] violated [P]laintiff's rights under the Constitution of the United States." (Compl. ¶ 35.)  Plaintiff neither cites nor describes any official municipal policy or practice, nor does he allege that any individual had official policymaking authority and took action pursuant to that authority.[8]  Additionally, the Complaint is devoid of any facts that support the existence of a tacit, widespread custom sufficient to sustain a claim for relief under *Monell*.  "Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim." *Maynard v. City of New York*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (reaffirming "that an allegation of municipal policy or custom would be insufficient if wholly conclusory"); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution"); *cf. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

---

[8] Although Defendant Ferrara was the Chief of Police at the time the alleged conduct took place, his position does not alone render him a policymaker for the purposes of *Monell* liability.  "[T]he determination of whether a municipal official wields final policymaking authority regarding a particular action constitutes a question of state law . . . ."  *Blasetti v. Pietropolo*, 213 F. Supp. 2d 425, 431 (S.D.N.Y. 2002); *see also Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 563 (S.D.N.Y. 2003) ("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." (internal quotation marks omitted)).

b.  Failure to Train

The Court next considers whether Plaintiff has adequately pleaded a claim for relief against the City under a theory of failure to train or supervise pursuant to *Monell*.

To hold the Town liable under § 1983 for an alleged failure to train and/or supervise, Plaintiff must plausibly allege that the Town's failure to train "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (internal quotation marks omitted).  This "stringent standard of fault" requires "proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

In his response to Defendants' Motion, Plaintiff cites to "General Order N[o]. A-008 of the Newburgh City [P]olice [D]epartment," which Plaintiff contends contains "a requirement for officers in the City of Newburgh to document any incident involving use of force."  (Pl.'s Resp. 4–5.)  Plaintiff asserts that Defendants "never followed these policies as directed by the[] General Order[]" as "[t]here w[ere] never any 'use of force' reports written to support [D]efendant[s'] claim that force was either applied or necessary."  (*Id.* at 5.)  To the extent that Plaintiff suggests that the lack of reporting led to his injuries, Plaintiff has failed to adequately plead facts to support this claim.

Plaintiff contends that "Defendant Michael Ferrara . . . failed to properly train and supervise [D]efendants[] Henderson[,] Pitt[,] Lahar[,] Cerone[,] and Weaver, and as a result of the lack of proper training and supervision, . . . [P]laintiff suffered serious physical injuries." (Compl. ¶ 25.)  However, given that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick*, 563 U.S. at 61; *see also Tuttle*, 471 U.S. at 822–23 (noting that a policy of inadequate training is "far more nebulous, and

16

a good deal further removed from the constitutional violation, than was the policy in *Monell*"), this sort of conclusory allegation, without more, fails to satisfy the policy and custom requirement necessary to hold the City liable, *see Tieman*, 2015 WL 1379652, at *22 ("To state a claim for municipal liability based on failure to train, [a] [p]laintiff . . . must allege facts that support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused his [or her] constitutional injuries."); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept, 28, 2011) (noting that "courts . . . have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).  Here, Plaintiff's broad, conclusory allegations are far from enough to sustain municipal liability based on a purported failure to train.  *See Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation omitted)); *Johnson*, 2011 WL 666161, at *3 (finding the plaintiff's "unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" insufficient to establish municipality liability).[9]  The fact that the Police Department had a policy in place requiring *reporting* of the use of force has no impact on why or whether the alleged constitutional violations occurred.  Indeed, the existence of such a policy arguably was to Plaintiff's benefit, so the harm, if any, was from individual officers allegedly not following it.

---

[9] Plaintiff's reliance on *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), is misplaced.  As Defendants note, *Amnesty America* predates *Twombly* and *Iqbal* and thus, "its discussion of pleading requirements [is] outdated."  (Defs.' Reply Mem. of Law in Supp. of Dismissal 3 (Dkt. No. 51).)

Put another way, had Defendant Henderson reported the use of force, it would not change the Court's analysis.

Plaintiff's citations to other lawsuits including claims of excessive force against the City are similarly unavailing.  (*See* Pl.'s Resp. 6.)  "[T]he Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged excessive force is not probative of the existence of an underlying policy by a municipality, police department, or department of corrections." *Tagliaferi v. Town of Hamden*, No. 10-CV-1759, 2014 WL 129223, at *12 (D. Conn. Jan. 14, 2014); *see, e.g.*, *Jones v. City of New York*, No. 12-CV-3658, 2013 WL 6047567, at *13 (E.D.N.Y. Nov. 14, 2013) ("[T]he existence of other lawsuits against the [c]ity alleging similar violations of constitutional rights also does not establish a policy or custom as necessary under *Monell*."), *vacated and remanded* 603 F. App'x 13 (2d Cir. 2015); *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 311 (S.D.N.Y. 1998) ("The mere fact of other lawsuits against the City does not provide a basis for liability [pursuant to *Monell*].");  *Mendoza v. City of Rome*, 872 F. Supp. 1110, 1118 (N.D.N.Y. 1994)) ("[C]laims . . . filed against the City of Rome, standing alone, do[] not establish a pattern, policy, or practice which [is] causally related to the . . . use of excessive force upon the plaintiff.").

In *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014), cited by Plaintiff, the plaintiffs alleged that the City of Newburgh failed to properly monitor and train officers in the use of force.  The amended complaint "detail[ed] [17] excessive force claims made against the [c]ity in [a] seven-year time period." *Id.* at *4.  The defendants argued that the 17 instances "simply demonstrate[d] other individuals plausibly alleged that they experienced similar violations[,] not that these violations actually occurred." *Id.* (alterations and

internal quotation marks omitted).  The court was unpersuaded and held that such claims

"evidence[d] [that] the [c]ity was on notice to the possible use of excessive force by its police

officers on [17] different occasions" and were proof of "deliberate indifference."  *Id.*  Plaintiff

also cites *Tieman*, in which the "[p]laintiff . . . listed and described [nine] lawsuits" filed against

the city.  2015 WL 1379652, at *2–3.[10]

      However, unlike in *McCants* and *Tieman*, here, Plaintiff has not "detail[ed] . . . excessive

force claims made against the City" in his Complaint or his response to Defendants' Motion.

2014 WL 6645987, at *4.  Indeed, Plaintiff has only cited to cases in which *other plaintiffs*

identified lawsuits filed against the City.  Plaintiff's claims against the City of Newburgh under

*Monell* are therefore dismissed.

### c.  State Law Negligence

      Defendants further contend that "[t]o the extent the [C]omplaint is construed as alleging

state law negligent training claims, these must similarly be dismissed . . . [for Plaintiff's]

fail[ure] to file a notice of claim."  (Defs.' Mem. 10.)  In response, Plaintiff does not contest that

he did not file a notice of claim, but rather asserts that "[t]here is no need to file [a] [n]otice of

[claim], as that is only required in the court of claims."  (Pl.'s Resp. 7.)

      "[I]n a federal court, state notice-of-claim statutes apply to state-law claims."  *Hardy v.*

*N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis omitted); *see also*

*Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-974, 2015 WL

5729969, at *44 (S.D.N.Y. Sept. 30, 2015) (same); *Warner v. Vill. of Goshen Police Dep't*, 256

---

[10] In *Tieman*, this Court found that "allegations [of previous lawsuits] fail[ed] to plausibly state that there is a [c]ity practice of using excessive force during arrests . . . so consistent and widespread as to constitute a custom or usage."  2015 WL 1379652, at *16; *see also id.* (collecting cases).

F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").  General municipal law § 50-i makes clear that a notice of the particular claim is required prior to the commencement of an action against a municipality.  *See* N.Y. Gen. Mun. Law § 50-i ("No action . . . shall be prosecuted or maintained against a . . . town . . . for [specified injuries] alleged to have been sustained by reason of the negligence or wrongful act of such . . . town . . . or of any officer, agent[,] or employee thereof . . . , unless, [among other things,] a notice of claim shall have been made and served upon the . . . town . . . in compliance with [§] [50]-e of this article    . . . .").  A plaintiff is required to serve the notice of claim "within [90] days after the claim arises."  *Id.* § 50-e(1)(a).  This notice of claim requirement is "construed strictly by New York state courts," and a "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy*, 164 F.3d at 793–94 (internal quotation marks omitted). Therefore, because Plaintiff has not alleged that he filed a notice of claim, his claims for negligence under state law are dismissed.  *See El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) (explaining that, "[a]bsent a showing of . . . a notice of claim, the complaint may be dismissed for failure to state a cause of action." (internal quotation marks omitted) (citing N.Y. Gen. Mun. Law §§ 50-e, 50-i)); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing N.Y. Gen. Mun. Law § 50-i(1)(b))).

### 3.  Fourteenth Amendment

Plaintiff's theory of liability for Defendants' "failure to protect" him under the Fourteenth Amendment appears to hinge on a violation of his substantive due process right to bodily integrity, a right recognized by the courts.  *See Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir.

2007) ("The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable government interference."); *Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006) (noting that the Fourteenth Amendment protects an individual's interest in bodily integrity); *accord Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (noting that among the liberties protected by the Due Process Clause of the Fourteenth Amendment is "a right to be free from . . . unjustified intrusions on personal security"); *see also Wragg v. Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (recognizing a substantive due process right not to be physically harmed by a government official).[11]

The Second Circuit has emphasized that "[o]nly an affirmative act can amount to a violation of substantive due process, because the Due Process Clause is phrased as a limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Lombardi*, 485 F.3d at 79 (internal quotation marks omitted). Moreover, state action resulting in bodily harm is not a substantive due process violation unless the state "action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Thus, it is insufficient to merely allege that a state actor failed to protect an individual, even from a known danger of bodily harm, or failed to warn that individual of such danger. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125–29 (1992) (holding that there was no due process violation where the plaintiff alleged that the city failed to properly train

---

[11] While the Due Process Clause protects the right to bodily integrity, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 123, 125 (1992). "It is important, therefore, to focus on the allegations in the complaint to determine how [a plaintiff] describes the constitutional right at stake and what the city allegedly did to deprive [him] of that right." *Id.*

or warn its employees of known dangers that resulted in a sanitation worker's asphyxiation).

This includes dangers arising from private parties.  As the Supreme Court explained in *DeShaney*

*v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the purpose of the

Due Process Clause of the Fourteenth Amendment "[i]s to protect the people from the State, not

to ensure that the State protect[s] them from each other."  *Id.* at 196.  This does not leave those

who suffer at the hands of private parties without recourse; "[t]he Framers were content to leave

the extent of government obligation in the latter area to the democratic political process."  *Id.*

However, "in exceptional circumstances a governmental entity may have a constitutional

obligation to provide . . . protection, either because of a special relationship with an individual,

or because the governmental entity itself has created or increased the danger to the individual."

*Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (citation omitted) (citing

*DeShaney*, 489 U.S. at 198).  Here, Plaintiff alleges no "special relationship" between himself

and Defendants, but instead contends that Defendants "stood by and did nothing to intervene"

and "failed to protect . . . [P]laintiff as required by law."  (Compl. ¶¶ 23–24.)[12]  *See Velez v. City*

---

[12] The special relationship exception arises from the *DeShaney* Court's acknowledgment that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."  *DeShaney*, 489 U.S. at 198.  As examples, the Court listed the obligations of the state to prisoners and involuntarily committed patients, stating that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *Id.* at 199–200.  Under such circumstances, the state may owe the incarcerated individual an affirmative duty to protect against harms to his liberties inflicted by third parties.  But the duty arises solely from "the State's affirmative act of restraining the individual's freedom to act on his own behalf [] through incarceration, institutionalization, or other similar restraint of personal liberty."  *Id.* at 200.

Indeed, the Second Circuit has "focused on involuntary custody as the linchpin of any special relationship exception."  *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008) (compiling cases in which the government's restriction of the individual's freedom impacted the application of the special relationship exception).  Here, at the time that "assailants attacked" Plaintiff, (Compl. ¶ 16), he was not in any relationship with Defendants that would resemble those that have been found to lie within the bounds of the special relationship exception.

*of New York*, 730 F.3d 128, 135 (2d Cir. 2013) (noting that "to sustain liability against a municipality, the duty breached must be more than that owed the public generally" and the plaintiff "bears the burden of proving a special relationship" in order to establish liability (internal quotation marks omitted)); *Martinez v. County of Suffolk*, 999 F. Supp. 2d 424, 433 (E.D.N.Y. 2014) (noting that "absent a special relationship, a municipality cannot be held liable for failing to provide proper police protection, a discretionary governmental duty owed to the public at large." (alterations and internal quotation marks omitted)).

To the extent Plaintiff asserts a state-created danger exception to *DeShaney*, the Court finds Plaintiff has failed to adequately allege that Defendants' actions fall under the ambit of this exception.  Under this form of liability, when a "government official takes an affirmative act that creates an opportunity for a third party to harm a victim (or increases the risk of such harm), the government official can potentially be liable for damages."  *Lombardi*, 485 F.3d at 80.  In cases where the Second Circuit has found a state-created danger, "a third party's criminal behavior harmed the plaintiff after a government actor—always a law enforcement officer—enhanced or created the opportunity for the criminal act through some interaction or relationship with the wrongdoer."  *Id.*  Put another way, the "special relationship" exception arises from "the relationship between the state and a particular victim, whereas 'state created danger' liability arises from the relationship between the state and the private assailant."  *Pena*, 432 F.3d at 109.

The early incantations of state-created danger involved law enforcement officers encouraging private actors to inflict harm upon others.  In the wake of *DeShaney*, the Second Circuit first recognized the notion of a state-created danger in *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).  In *Dwares*, the plaintiff alleged that

police officers conspired with "skinheads" to assault a group of flag-burners expected to be at a public protest.  In particular, the plaintiff claimed that the police officers who were present when the skinheads attacked the plaintiff while he attended the demonstration (and supported those who burned flags), had previously communicated to the skinheads that the police would not interfere with, or arrest, the skinheads for assaulting any flag-burners, "unless they got completely out of control."  *Id.* at 96–97.  According to the *Dwares* court, such "a prearranged official sanction of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause."  *Id.* at 99; *see also Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009) ("The affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence.").

The next application of the state-created danger exception was in *Hemphill v. Schott*, 141 F.3d 412 (2d Cir. 1998).  Describing state-created danger liability as arising when a "state actor aids and abets a private party in subjecting a citizen to unwarranted physical harm," *id.* at 418, the *Hemphill* court found such liability where the police not only returned a firearm to a robbery victim, but then drove him to the scene of the robber's arrest, whereupon the robbery victim shot the robber, *id.* at 418–20.  The following year, in *Snider v. Dylag*, 188 F.3d 51 (2d Cir. 1999), the Second Circuit held that a prison guard who told inmates that it was "open season" on a prisoner, created a danger where inmates later beat up that prisoner.  *Id.* at 55.

The reach of state-created liability was extended in *Pena v. DePrisco*, *supra*.  In *Pena*, family members of pedestrians who were killed by an intoxicated off-duty police officer brought a § 1983 action against other officers, claiming that they sanctioned the intoxicated officer's alcohol abuse and driving under the influence, in violation of the pedestrians' substantive due

process rights. In analyzing the plaintiffs' theory of liability, the *Pena* court broke down the categories of officers into those who merely "failed to intercede on the day of the accident," and those who encouraged, even if implicitly, the intoxicated officer to drink excessively and drive. *Id.* at 110–11. In making this distinction, the court recognized that in applying the state-created danger doctrine, the Second Circuit has "sought to tread a fine line between conduct that is 'passive' as in *DeShaney* and that which is 'affirmative' as in *Dwares*," *id.* at 109, an exercise that the court acknowledged can be "difficult," *id.* at 110. Nonetheless, the court had little trouble in holding that the plaintiffs' allegations regarding officers who either failed to intercede or otherwise "stood by and did nothing" to address the intoxicated officer's previous misconduct were "inadequate to state a substantive due process claim." *Id.* As the court emphasized: "A failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state *created* danger." *Id.* (emphasis in original).

Plaintiff's allegations are far different than those found by the Second Circuit to fit within the narrow class of cases where governmental conduct is found to be a state-created danger. There obviously is nothing akin to the explicit encouragement of the skinheads alleged in *Dwares*. There also is nothing similar to the direct contact between the law enforcement officials and the miscreants in *Pena* and *Okin*, where the "repeated, sustained inaction" by the governmental officials implicitly communicated to the wrong-doers that there would be no consequences suffered from their obvious and violent misdeeds. *Okin*, 577 F.3d at 428. Admittedly, "'[t]he boundaries of the state created danger exception to *DeShaney* are not entirely clear,' but the exception does require a government defendant to 'either be a substantial cause of the danger or at least enhance it in a material way.'" *Scruggs v. Meriden Bd. of Educ.*, No. 03-CV-2224, 2007 WL 2318851, at *12 (D. Conn. Aug. 10, 2007) (alteration omitted) (quoting

*Clarke v. Sweeney*, 312 F. Supp. 2d 277, 293 (D. Conn. 2004)).  Put another way, Plaintiff's

failure-to-intercede theory does not make good a state-created danger claim.  *See Pena*, 432 F.3d

at 110 ("A failure to interfere when misconduct takes place . . . is not sufficient to amount to a

state *created* danger." (emphasis in original)).

      Relatedly, Plaintiff's allegations fail to support the notion that Defendants' conduct

shocked the conscience.  As noted, to establish a violation of his substantive due process rights,

in addition to the elements described above regarding state-created danger, Plaintiff must

demonstrate that Defendants' actions were "so egregious, so outrageous, that [they] may fairly

be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8; *see also Matican v.

City of New York*, 524 F.3d 151, 158 (2d Cir. 2008).  In *Lewis*, the Supreme Court noted that

intentionally inflicted injuries are the "most likely to rise to the conscience-shocking level."  523

U.S. at 849.  On the other end of the spectrum, the Supreme Court has emphasized that

"negligently inflicted harm is categorically beneath the threshold of constitutional due process."

*Id.*; *see also Okin*, 577 F.3d at 431 (distinguishing between intentionally inflicted harms, which

are likely to rise to conscience-shocking level, and negligently inflicted harms, which cannot

constitute conscience-shocking behavior).  In between these poles, the Supreme Court has held

"that harm inflicted recklessly or with deliberate indifference does not shock the conscience in

the context of a time sensitive emergency, such as a high-speed chase." *Matican*, 524 F.3d at

158 (citing *Lewis*, 523 U.S. at 853–54).  However, even in the context of deliberative

decisionmaking, the Second Circuit has recognized that where state actors have been subject "to

the pull of competing obligations," *Lombardi*, 485 F.3d at 83 (internal quotation marks omitted),

the courts should be reluctant to impose "broad constitutional liability for the government

officials, whose decisionmaking might be inhibited by the threat of lawsuits," *Matican*, 524 F.3d

at 159 (citing *Lombardi*, 485 F.3d at 84).[13]  But where "the alleged behavior of . . . defendants [took place] over an extended period of time and in the face of action that presented an obvious risk of severe consequences and extreme danger," the Second Circuit has found that official inaction can shock the conscience.  *Pena*, 432 F.3d at 114; *see also Okin*, 577 F.3d at 431–32 (finding that the plaintiffs' allegations of the officers' repeated failure to address obvious domestic abuse created triable issue about the officers' deliberate indifference and their conscience-shocking behavior).

For Plaintiff to demonstrate conscience-shocking behavior in this case, he must establish at least a plausible claim that Defendants were repeatedly and deliberately indifferent to an obvious threat of violence to him.  There is no suggestion that until the events of November 3, 2012, Defendants knew of any violence inflicted against Plaintiff (or even knew Plaintiff).  And Plaintiff's allegations make clear that Defendants were in the middle of a brawl involving numerous individuals, including Plaintiff.  Just because Plaintiff suffered injuries during this fight in their presence does not mean Defendants' conduct shocked the conscience and, therefore, that Defendants violated Plaintiff's substantive due process rights.  Accordingly,

---

[13] Indeed, in his Complaint, Plaintiff states that "Defendant . . . Lahar[] instead chose to do nothing because his . . . attention was diverted to two men running and jumping into a cab, leaving the scene where . . . [P]laintiff was severely injured and could have been possibly dead." (Compl. ¶ 20), suggesting any alleged indifference to Plaintiff's well-being was a result of Defendant Lahar focusing his attention elsewhere at the scene of the fight at the DryDock club.

Plaintiff has failed to demonstrate that Defendants violated his constitutional right to bodily integrity, and the Court grants Defendants' Motion To Dismiss on this ground.[14]

### 4.  Excessive Force

Defendants assert that Plaintiff's excessive force claim against Defendant Henderson should be dismissed for failure to state a claim and, alternatively, is precluded under the doctrine of collateral estoppel because "[t]he transcript from Gantt's criminal trial establishes that he was given a 'full and fair opportunity' to litigate the allegation of assault on Officer Henderson." (Defs.' Mem. 18.)  Defendants further note that "[t]o make [a] determination [as to whether Defendant Henderson's use of force was reasonable], the [C]ourt need only consider Gantt's testimony at his criminal trial," submitted as Exhibit C to Defendants' filing.  (*Id.* at 17.)  The Court first addresses Defendants' collateral estoppel argument, and then turns to the argument that Plaintiff has failed to state a claim.

### a.  Consideration of Defendants' Exhibits

As a threshold matter, the Court considers the proper treatment of exhibits submitted by Defendants in connection with their Motion.  "When considering a motion to dismiss, the Court's review is confined to the pleadings themselves, with a few well-established exceptions.

---

[14] Plaintiff's claim that "[t]he acts and practice[s] of [D]efendants" violated his rights "secured by the [Eighth] . . . Amendment[]," (Compl. ¶ 35), are dismissed for failure to state a claim.  While Plaintiff is currently an inmate at Clinton, the actions complained of did not occur while Plaintiff was incarcerated and accordingly, the Eighth Amendment is inapplicable.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (finding that to substantiate an Eighth Amendment claim "based on a failure to prevent harm, the *inmate* must show that *he is incarcerated under conditions posing a substantial risk of serious harm*." (emphasis added)); *Heckman v. Medeane*, 746 F. Supp. 2d 471, 473 (W.D.N.Y. 2010) ("The Eighth Amendment protects *incarcerated individuals* from being subjected to cruel and unusual punishment." (emphasis added)); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007 WL 2080517, at *23 (N.D.N.Y. July 19, 2007) ("Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmate[']s health or safety.").

To go beyond the allegations in the [c]omplaint would convert the . . . motion to dismiss into one for summary judgment . . . ." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  However, a court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Defendants have attached as exhibits to their Motion the jury verdict, Gantt's testimony in his defense, and the charge to the jury, all related to Gantt's criminal proceedings in New York State Court.  (Lee Aff. Exs. B–D.)  As the material from Gantt's criminal trial is not annexed to, nor referenced in, Plaintiff's Complaint, the Court declines to consider the documents on that ground.  Nor were the documents "integral" to Plaintiff's claims, as Plaintiff makes no mention of the related criminal proceedings in his submissions to this Court.  *Cf. Thomas*, 232 F. Supp. 2d at 276 (finding documents were "integral" where the plaintiff had to rely on the content of them "in order to explain what the actual unlawful course of conduct was on which the [d]efendants embarked"); *see also Munno v. Town of Orangetown*, 391 F. Supp. 2d

263, 269 (S.D.N.Y. 2005) (finding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint").

In resolving the instant Motion, the Court is entitled to take notice of matters of public records, including, for example, dispositions in criminal cases. *See Moore U.S.A. Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (explaining that a court may take judicial notice of "matters of public record," which include "statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action"); *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . ."). However, in taking judicial notice, the Court does so only to establish "the fact of such litigation," but not for the truth of the matters asserted in that proceeding. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." (internal quotation marks omitted)); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine *what* statements [a document] contained—but *again not for the truth of the matters asserted.*" (internal quotation marks omitted)). Accordingly, the Court takes judicial notice of the fact that Plaintiff was convicted of attempted assault on a police officer in connection with the events of November 3, 2012. While the exhibits may be public records of which the Court may take judicial notice, it may not consider them for the truth of the matters asserted therein. *See Roth*, 489 F.3d at 509; *Global Network Commc'ns*, 458 F.3d at 157.

30

#### b.  Collateral Estoppel

Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *see also Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Defendants assert that Plaintiff "was given a 'full and fair opportunity' to litigate the allegation of assault on Officer Henderson," (Defs.' Mem. 18), and that Plaintiff's criminal conviction for attempted assault on a police officer bars his excessive force claim in the instant Action, (*see id*. at 17–18).  The Court disagrees.

A person is guilty of aggravated assault upon a police officer when, "with intent to cause

serious physical injury to a person whom he knows or reasonably should know to be a police officer . . . engaged in the course of performing his official duties, he causes such injury by means of a deadly weapon."  N.Y. Penal Law § 120.11.  Here, the claim at hand—whether Defendant Henderson used excessive force against Plaintiff—was not raised in the prior proceeding.  "An assault conviction does not bar an individual from bringing a claim for excessive force under [§] 1983, even where the conviction arises out of the same occurrence and involves the same defendants if excessive force was not relevant to, and not raised in, the criminal action." *Brooks v. Brennan*, No. 12-CV-624, 2014 WL 6975370, at *6 (N.D.N.Y. Dec. 9, 2014); *see Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 544 (S.D.N.Y. 2005) (holding that the plaintiff's conviction for assaulting a corrections officer did not collaterally estop the plaintiff's later excessive force claim brought under § 1983 where the criminal court "did not find that [the] plaintiff was not assaulted nor that [the] plaintiff was not subjected to unnecessary and wanton infliction of pain").  When Plaintiff was convicted for attempted aggravated assault on a police officer, the jury did not find that Plaintiff was not assaulted, nor was it asked to find, that Plaintiff was not subjected to unnecessary use of force.  While Plaintiff's conviction "certainly cast[s] doubt on his claim," it does not preclude him from raising it here.  *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999).  Thus, Plaintiff is not collaterally estopped from raising his excessive force claim against Defendant Henderson in the instant Action.[15]

### c.  Failure to State a Claim

Defendants also contend that Plaintiff fails to state a claim for excessive force.  (Defs.'

---

[15] While the Court concludes that Plaintiff is not barred by the collateral estoppel doctrine in bringing his excessive force claim, and the Court cannot consider Plaintiff's trial testimony for the truth of the matter asserted in deciding this Motion, Defendants will have an opportunity to rely on this testimony if they file a summary judgment motion.

Mem. 15–18.)  Plaintiff's sole allegation of excessive force is against Defendant Henderson for "straddling . . . shak[ing,] and striking . . . [P]laintiff in the facial area when [P]laintiff was on the ground unconscious."  (Compl. ¶ 21.)  The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest.  *See Graham v. Connor*, 490 U.S. 386, 388, 391–95 (1989).  In this context, the question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  *See id.* at 397.  An officer's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances."  *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995).  As to the substance of such a claim, "'[n]ot every push or shove'" is excessive, *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), and "de minimis uses of force generally do not suffice to state a constitutional claim," *Griffin*, 193 F.3d at 92 (italics omitted).

In reviewing such a claim, the Court considers "the totality of the circumstances, . . . including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others[,] and whether he is actively resisting arrest."  *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000).  Plaintiff's Complaint asserts that Defendant Henderson "assault[ed] [P]laintiff" "when [P]laintiff was on the ground unconscious."  (Compl. ¶¶ 21, 23.)  Interpreting the allegations in the light most favorable to Plaintiff, *see Gonzalez*, 2014 WL 2475893, at *2, Plaintiff has stated a plausible claim that Defendant Henderson's actions were not objectively reasonable as Plaintiff could not have "posed an immediate threat to the safety of others" and was not "actively resisting arrest" while unconscious.  *Sullivan*, 255 F.3d at 165.  Though Plaintiff's allegations of excessive force may be "weak" or "thin," *Griffin*, 193 F.3d at 91,

Plaintiff plausibly states a claim that Defendant Henderson acted unlawfully, *Iqbal*, 556 U.S. at 678, and therefore Defendants' Motion To Dismiss the excessive force claim against Defendant Henderson is denied.  The time to test the strength of Plaintiff's allegations will have to await another day.

### 5.   Malicious Prosecution and Malicious Abuse of Process

Defendants additionally argue that to the extent Plaintiff's Complaint can be read to assert claims for malicious prosecution or malicious abuse of process, these claims must be dismissed in light of Plaintiff's conviction at his related criminal trial.  (*See* Defs.' Mem. 14–15.) In response, Plaintiff asserts that his Complaint raises no such claim.  (*See* Pl.'s Resp. 7 ("Plaintiff does not make any claim within the [C]omplaint to address [malicious prosecution or malicious abuse of process].").)  Plaintiff has not only failed to respond to Defendants' arguments in support of dismissal, *see Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."), but has affirmatively refuted Defendants' suggestion that Plaintiff intended to assert such claims.  The Court therefore dismisses these claims.

### 6.  Injunctive Relief[16]

Finally, Defendants argue that Plaintiff lacks standing to obtain injunctive relief and alternatively, has failed to plead the necessary elements of a claim for injunctive relief, because Plaintiff does not allege the likelihood of future harm at the hands of Defendants.  (*See* Defs.' Mem. 18–23.)

---

[16] Additionally, the Court denies Plaintiff's request for "reasonable attorney's fees," (Compl. 8), because "[a] pro se litigant who is not a lawyer is not entitled to attorney's fees," *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (emphasis omitted).

To have standing to obtain injunctive relief, Plaintiff "must show a likelihood that he will be injured in the future" by the conduct he seeks to enjoin. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (alterations and internal quotation marks omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). Further, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Shain*, 356 F.3d at 215 (alteration and internal quotation marks omitted)).

In support of their argument, Defendants evoke *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the seminal case on the issue of equitable standing. In *Lyons*, the plaintiff alleged that during a traffic stop, police officers placed him in a chokehold, resulting in a loss of consciousness and injury to his throat. *Id.* at 97–98. The plaintiff sought injunctive relief against the City of Los Angeles to prevent its police force from using chokeholds except where officers were reasonably threatened with the immediate use of deadly force. *Id.* at 98. The plaintiff alleged that he was entitled to such relief because given the pervasive use of chokeholds by the police, he had a justifiable fear of being choked again. *Id.* The Supreme Court disagreed, holding that the risk that the plaintiff would come into contact with the police and suffer a subsequent unlawful chokehold was speculative in nature and insufficient to confer equitable standing. *Id.* at 109. Specifically, the Supreme Court held that "Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom

they happen to have an encounter, . . . or, (2) that the [c]ity ordered or authorized police officers to act in such manner." *Id.* at 105–06.[17]

Here, there is nothing in Plaintiff's Complaint that indicates the likelihood of a future encounter with Defendants, let alone that such an encounter will result in the allegedly unconstitutional conduct of which Plaintiff complains. Indeed, Plaintiff does not respond to Defendants' contention that he lacks standing to assert a claim for injunctive relief. *See Lipton*, 315 F. Supp. 2d at 446. Accordingly, the Court dismisses Plaintiff's claim for injunctive relief.[18]

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss Plaintiff's claims, with the exception of the claims against Defendant Ferrara and the excessive force claim against Defendant Henderson, as to which the Court denies the Motion To Dismiss.

In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies

---

[17] The Court notes that in *Lyons*, the plaintiff had alleged that the City of Los Angeles provided "authorization, instruction and encouragement" for the use of chokeholds, and that the tactic was "regularly and routinely" applied by polices officers "in innumerable situations" where there was no threat of deadly force. 461 U.S. at 98. The Supreme Court concluded, however, that this allegation was "not equivalent to the unbelievable assertion that the City either orders or authorizes application of the chokeholds where there is no resistance or other provocation." *Id.* at 106 n.7. As detailed *supra*, Plaintiff fails to even allege that an official policy or custom existed, let alone that there was a direct causal relationship between a policy and Plaintiff's alleged constitutional deprivation.

[18] Defendants additionally assert that Plaintiff's claim for injunctive relief is deficient because the Complaint lacks "[e]ven . . . a basic allegation upon which to try to rest a claim of standing," (Defs.' Mem. 22), and therefore the claim fails under Rule 12(b)(6). As the Court finds that Plaintiff lacks standing to pursue the claim pursuant to Rule 12(b)(1), it declines to address Defendants' arguments regarding the sufficiency of Plaintiff's claims. However, should Plaintiff choose to file an Amended Complaint, he should include allegations that address a likelihood that he will face a similar harm from Defendants in the future.

identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. The failure to do so may result in the dismissal of the claims with prejudice. If Plaintiff files no Amended Complaint, the Court will assume Plaintiff intends only to proceed with the claims against Defendant Ferrara and the excessive force claim against Henderson.

Within 14 days of the date of this Opinion & Order, Defendants shall provide the Court with a service address for Defendant Ferrara. Upon receipt of the address, the Court will issue an Order of Service as to the operative complaint.

The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 28.)

SO ORDERED.

Dated:      March **29**, 2017
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

37