UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY GANTT, JR.,

                      Plaintiff,

    -v-

MICHAEL FERRARA, POLICE CHIEF
CITY OF NEWBURGH; ERIC
HENDERSON, POLICE OFFICER CITY
OF NEWBURGH;

                      Defendants.

No. 15-CV-7661 (KMK)

ORDER & OPINION

Appearances:

Larry Gantt, Jr.
Ossining, NY
*Pro Se Plaintiff*

Kimberly H. Lee, Esq.
David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Larry Gantt, Jr. ("Gantt" or "Plaintiff"), currently an inmate at Sing Sing Correctional Facility ("Sing Sing"), brings this pro se action, under 42 U.S.C. § 1983, claiming violations of his Eighth and Fourteenth Amendment rights and the common law by City of Newburgh Police Chief Michael Ferrara ("Ferrara") and Police Officer Eric Henderson ("Henderson," and collectively, "Defendants"). Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment rights by "fail[ing] to perform their official duties" and that Henderson assaulted

him. (Am. Compl. at 1 ¶¶ 1, 2 (Dkt. No. 70).)[1] Before the Court is Defendants' Motion To Dismiss (the "Motion"). (Notice of Motion (Dkt. No. 75).) For the reasons to follow, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are assumed to be true for the purpose of deciding the Motion.

Plaintiff alleges that on November 3, 2012, at approximately 2:30 a.m., he was at the DryDock club in the City of Newburgh with his brother and a friend when a fight broke out between several patrons. (*Id*. at 3 ¶¶ 10–11.) The group was preparing to leave the club by car when Plaintiff's brother exited the car and returned to the club to locate a friend. (*Id.* at 3 ¶¶ 12–13.) Plaintiff was en route to his home, but decided to return to the club to find his brother. (*Id.* at 3–4 ¶ 14.) Upon returning to the club, Plaintiff believed he spotted his brother in a large crowd. (*Id.*) While walking toward the crowd, Plaintiff was struck in the head and subsequently attacked by several unknown male individuals. (*Id.* at 3–4 ¶¶ 14–15.) Plaintiff attempted to flee, but was unable to do so. (*Id.* at 4 ¶ 16.) Plaintiff was "forced . . . to fight for his life," (*id.*), as the assailants stabbed Plaintiff six times, knocked him to the ground, and kicked him repeatedly until he was unconscious, (*id.* at 4 ¶ 17).

Plaintiff asserts that during the attack, Henderson was seen by several witnesses "straddling, . . . shak[ing,] and str[iking] . . . Plaintiff in the facial area when Plaintiff was on the

---

[1] Paragraphs 19–22 of the Amended Complaint on ECF-generate page number 5 appear to be an exact copy of paragraphs 19–22 on ECF-generated page numbers 4 and 6 of the Amended Complaint. (*See* Am. Compl. at 4–6.) To avoid confusion, the Court cites to the ECF-generated page numbers stamped in the upper right-hand corner of Plaintiff's Amended Complaint first, followed by the paragraph number.

ground unconscious." (*Id.* at 4 ¶ 18.) Plaintiff also alleges that Henderson "admitted to striking Plaintiff in the face at least eight times." (*Id.* at 4 ¶ 19.)

Plaintiff alleges that Ferrara, as Chief of Police, "failed to properly train and supervise" Henderson, "and as a result of the lack of proper training and supervision . . . Plaintiff suffered serious physical injuries." (*Id.* at 6 ¶ 20.) According to Plaintiff, Ferrara's "failure to train . . . enabled his employees to not follow their own custom's [sic] and polices," which resulted in a number "of civil complaints and lawsuits alleging excessive force and police misconduct." (*Id.* at 6 ¶ 21.) Plaintiff contends that Ferrara "encouraged misconduct under his authority by not enforcing his policies and customs that . . . Henderson and others failed to follow." (*Id.* at 6 ¶ 23.) Further, Ferrara "continued to perpetuate" Henderson's misconduct "by applauding and promoting [him] instead of evaluating [his] mental health after . . . Henderson killed a man using his service gun while on duty after the deceased was *alleged* to have lunged with a knife," also in 2012. (*Id.* at 6 ¶ 22.) Plaintiff alleges that Ferrara owed a duty to Plaintiff to train, supervise, and control his police offices, but instead, he "acquiesced to [his] subordinates['] unlawful actions." (*Id.* at 8 ¶ 31.) As a proximate result of Ferrara's "fail[ure] to provide adequate training and control of . . . Henderson, Plaintiff . . . sustained permanent injuries," which caused him to incur medical bills and other expenses, as well as ongoing mental and physical pain and suffering. (*Id.* at 8 ¶ 32.)

Plaintiff alleges that Ferrara and Henderson violated Plaintiffs' Eighth and Fourteenth Amendment rights "by inadequately and improperly training and supervising [their] employees," which caused Plaintiff to sustain serious physical injuries without equal protection and due process of law. (*Id.* at 9 ¶ 35.) Plaintiff contends that Henderson subjected him "to pain, torture, and punishment without equal protection and due process of law, secured by the [Eighth] and

[Fourteenth] Amendments." (*Id.* at 9 ¶ 36.) Plaintiff's injuries included four stab wounds in his back and "lower lung and flank area," a stab on his temple, a stab on his hand, as well as "several small penetration wounds" on his back. (*Id.* at 7 ¶¶ 24, 26.) Plaintiff's lung collapsed, his kidney was punctured, and he suffered head trauma and facial swelling. (*Id.* at 7 ¶¶ 25, 28.) Due to the severity of his injuries, Plaintiff had to be transported by helicopter from St. Luke's Hospital to Westchester Medical Center to undergo emergency surgery, where he remained in critical care for three days. (*Id.* at 7 ¶¶ 27, 29.) Plaintiff required a chest-tube as well as two blood transfusions. (*Id.* at 7 ¶¶ 25, 29.) As a result of his pain, immobility, and injuries, Plaintiff was confined to a wheelchair for over a month, a walker for thirty days, and a cane for sixty days. (*Id.* at 8 ¶ 30.) At the time he filed the Amended Complaint, Plaintiff averred he still suffered from nerve damage on the left side of his face. (*Id.* at 7 ¶ 28.)

Plaintiff seeks a declaratory judgment that "[D]efendants' acts, polic[ies] and/or practice[s] . . . violated [P]laintiff's rights under the Constitution," (*id*. at 8 ¶ 33), and a permanent injunction prohibiting Defendants from engaging in the conduct described in the Complaint, (*id*. at 9 ¶ 34).[2] Additionally, Plaintiff requests compensatory and punitive damages in the amount of $20 million, as well as payment for "any and all future medical expenses

---

[2] Plaintiff's request for a permanent injunction is dismissed. As the Court explained in the prior Opinion granting in part Defendants' Motion to Dismiss, Plaintiff lacks standing to obtain injunctive relief because "there is nothing in Plaintiff's [Amended] Complaint that indicates the likelihood of a future encounter with Defendants, let alone that such an encounter will result in the allegedly unconstitutional conduct of which Plaintiff complains." *Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *17 (S.D.N.Y. Mar. 29, 2017).

4

accrued by [P]laintiff for the injuries [P]laintiff suffered," and the cost of this Action, including reasonable attorney's fees. (*Id.* at 9–10.)[3]

B. Procedural History

On September 29, 2015, Plaintiff filed a Complaint against the City of Newburgh Police Department, Ferrara, Police Sergeant Weaver ("Weaver"), and Police Officers Henderson, Mike Pitt ("Pitt"), Kevin Lahar ("Lahar"), and Joseph Cerone ("Cerone"). (Compl. 1 (Dkt. No. 2).) On October 6, 2015, Plaintiff's request to proceed in forma pauperis was granted. (Dkt. No. 4.) On October 13, 2015, the Court issued an Order of Service, dismissing Plaintiff's claims against the City of Newburgh Police Department and substituting the City of Newburgh as a defendant. (Dkt. No. 6.)

On March 21, 2016, Defendants filed their first Motion To Dismiss and accompanying Memorandum of Law. (Dkt. Nos. 28, 32.) Defendants attached to their Motion excerpts of transcripts from Plaintiff's criminal trial regarding the events of November 3, 2012, including the jury verdict, (Aff. of Kimberly H. Lee, Esq. ("Lee Aff.") Ex. B (Dkt. No. 29)), Plaintiff's testimony in his defense, (Lee Aff. Ex. C), and the charge to the jury, (Lee Aff. Ex. D). Defendants also served Plaintiff with a notice pursuant to Local Civil Rule 12.1. (Dkt. No. 31.)

In a letter to the Court filed April 5, 2016, Plaintiff requested that the Court order Defendants to produce the complete transcript of Plaintiff's related criminal case. (Dkt. No. 35.) Throughout April and May of 2016, the Parties sent correspondence to the Court regarding the voluminous transcripts and Plaintiff's need for the transcripts to respond to Defendants' Motion.

---

[3] The Court denies Plaintiff's request for attorney's fees, because "a pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (italics omitted).

5

(*See, e.g.*, Dkt. Nos. 36–37, 39, 41–42.)[4] On May 23, 2016, the Court denied Plaintiff's request to order Defendants to produce the complete set of transcripts. (Dkt. No. 44.)

On July 6, 2016, Plaintiff filed his response to Defendants' Motion, (Dkt. No. 49), and on July 12, 2016, Defendants filed their reply, (Dkt. No. 51). On March 29, 2017, the Court granted the First Motion To Dismiss in part and denied it in part. *See Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889 (S.D.N.Y. Mar. 29, 2017). (Dkt. No. 55.) Given Plaintiff's pro se status, and because it was the first adjudication of Plaintiff's claims on the merits, the claims were dismissed without prejudice and Plaintiff was given 30 days to file an Amended Complaint. (*Id.*)

In light of service issues related to Ferrara, on April 5, 2017, counsel for Defendants wrote the Court inquiring whether Plaintiff intended to file an Amended Complaint, so that Counsel could file an appearance. (Dkt. No. 56.) In a letter dated April 12, 2017, Plaintiff informed the Court that he intended to file an Amended Complaint and sought a 45-day extension to do so due to his limited access to the law library and other resources at his facility. (Dkt. No. 61.) The Court granted the extension, but noted there would be no more. (Dkt. No. 62.) In a letter dated May 17, 2017, Plaintiff sought another 30-day extension due to his transfer to a new facility and delay in receiving his legal property. (Dkt. No. 64.) On May 30, 2017, the Court granted the extension, and informed Plaintiff there would be no more extensions. (Dkt. No. 65.)

---

[4] On April 20, 2016, Plaintiff filed a Motion for Appointment of Counsel, (Dkt. No. 38), which the Court denied without prejudice in an Order dated November 30, 2016, (Dkt. No. 54).

On July 6, 2017, counsel for Defendants informed the Court that the deadline has passed for Plaintiff to file the Amended Complaint. (Dkt. No. 66.)[5] On July 14, 2017, the Court issued an Order dismissing the claims previously dismissed without prejudice with prejudice, and requested the Clerk of the Court terminate Defendants City of Newburgh, Pitt, Lahar, Cerone, and Weaver. (Dkt. No. 67.)

In a letter dated July 18, 2017, Plaintiff informed the Court that he had been transferred again to another facility, and because of unusual and unfortunate circumstances, he was unable to meet the deadline to file the Amended Complaint. (Dkt. No. 68.) Plaintiff was willing to "concede to the dismissal [his] claims, which the exception of the claims against Defendant Ferrara and the excessive force claim against Defendant Henderson." (*Id.*) The Court scheduled a conference on July 31, 2017 to discuss the request. (*Id.*) At the conference, the Court adopted a schedule for Plaintiff to file an Amended Complaint, and for Defendants to answer. (Dkt. No. 69.)

Plaintiff's Amended Complaint was filed on August 30, 2017. (Am. Compl.) On September 18, 2017, Henderson filed his Answer to the Amended Complaint. (Dkt. No. 71.) Also on September 18, 2017, Defendants sought leave to file a second Motion To Dismiss. (Dkt. No. 73.) The Court adopted a briefing schedule for the Motion. (Dkt. No. 74.)

On October 26, 2017, Defendants filed the Motion and accompanying Memorandum of Law. (Notice of Motion; Defs.' Mem. Law in Supp. of Motion To Dismiss ("Defs.' Mem.") (Dkt. No. 77).) In a letter filed on November 14, 2017, Plaintiff requested an extension of time to respond to the Motion, (Dkt. No. 80), and the Court gave Plaintiff until December 29, 2017 to

---

[5] Defendant Ferrara's counsel also contended that as of July 6, 2017, Ferrara had yet to be served. (Dkt. No. 66.) However, service was effected on April 21, 2017. (Dkt. No. 67).

respond, (Dkt. No. 81). Plaintiff did not file a response by the December 29, 2017 deadline; however, on June 4, 2018, Plaintiff filed a Motion for Appointment of Counsel, (Dkt. No. 82), a Motion For Discovery, (Dkt. No. 83), and an opposition to Defendants' Motion, (Pl.'s Mem. Law in Opp. to Motion To Dismiss ("Pl.'s Mem.") (Dkt. No. 84)).[6] Defendants filed a Reply Memorandum on July 8, 2018. (Defs.' Reply Mem. Law in Supp. of Motion To Dismiss ("Defs.' Reply Mem.") (Dkt. No. 87).)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). The standards of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim and Rule 12(c) for judgment on the pleadings are the same. *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a

---

[6] The Court denied Plaintiff's Motion For Discovery, (Dkt. No. 86), and his Motion For Appointment of Counsel, (Dkt. No. 85).

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

1.  Claims Against Defendant Ferrara

Defendants move to dismiss the claims against Ferrara for failure to state a claim. (*See* Defs.' Mem. 4–7.) Defendants argue that aside from general allegations about Ferrara's failure to train, supervise, and discipline his officers, the Amended Complaint makes no allegations about Ferrara's personal involvement in any deprivation of Plaintiff's constitutional rights. (*Id.* at 4.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited

10

> deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege conduct by Ferrara that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

"Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Lindsey v. Butler*, 43 F. Supp. 3d 317, 329 (S.D.N.Y. 2014) (internal quotation marks omitted), *reconsideration granted in part on other grounds*, No. 11-CV-9102, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014), *reconsideration denied*, 2015 WL 1501625 (S.D.N.Y. Apr. 1, 2015); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) ("[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." (internal quotation marks omitted)). Similarly, "merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard." *Dotson v. Farrugia*, No. 11-CV-1126, 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012), *reconsideration denied*, 2012 WL 1864278 (S.D.N.Y. May 22, 2012).

To begin, the Amended Complaint does not allege Ferrara were present for, let alone participated directly in, the alleged assault by Henderson on November 3, 2012. *See Grullon*,

720 F.3d at 139 (listing as the first category personal involvement when a defendant participates directly in the alleged constitutional violation). Nor does the Amended Complaint allege that Ferrara was informed of the assault; thus, he cannot be responsible under the second category for "fail[ing] to remedy the wrong." *Id.* (italics and internal quotation marks omitted).

However, Plaintiff alleges that Ferrara failed to "properly train and supervise" Henderson. (Am. Compl. at 6 ¶ 20.) An allegation that a defendant failed to adequately train or supervise subordinates implicates the fourth *Colon* factor, i.e., that "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Grullon*, 720 F.3d at 139 (italics and internal quotation marks omitted). However, to establish personal involvement on that basis

> Plaintiff must show that [Ferrara] "knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff."

*Frederick v. Sheahan*, No. 10–CV–6527, 2014 WL 3748587, at *8 (W.D.N.Y. July 29, 2014) (alterations omitted) (quoting *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002)); *see also Kucera v. Tkac*, No. 12–CV–264, 2013 WL 1414441, at *6 (D.Vt. Apr. 8, 2013) (noting an "alleged failure [to supervise or train] [would] satisfy the fourth *Colon* factor if [the officers] 'knew or should have known that there was a high degree of risk that subordinates would behave inappropriately but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable officer would find necessary to prevent such a risk'" (alterations omitted) (quoting *Poe*, 282 F.3d at 142)). Here, Plaintiff fails to explain how Ferrara acted deliberately or with reckless disregard to a risk Henderson would assault someone in failing to properly train and supervise him. A conclusory allegation that Ferrara failed to train and supervise

subordinates is insufficient to establish personal involvement, absent some factual connection between his failure to train and the harm that eventually befell Plaintiff. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (finding no personal involvement where the plaintiff failed "to make factual allegations connecting [the defendant's] putative failure to adequately train and supervise their employees with the injuries [the] [p]laintiff sustained"); *McRae v. Gentile*, No. 14–CV–783, 2015 WL 7292875, at *5 (N.D.N.Y. Oct. 20, 2015) (finding no personal involvement by prison superintendent where the plaintiff alleged that the "[superintendent's] negligent training and supervision of the [d]efendant [c]orrections [o]fficers caused the [p]laintiff's injuries" but "provide[d] no facts to support [the superintendent's] personal involvement in the alleged assault," reasoning that "[v]ague and conclusory allegations that a supervisor negligently failed to train or supervise subordinate employees are not sufficient to establish personal involvement so as to give rise to personal liability." (internal quotation marks omitted)), *adopted by* 2015 WL 7300540 (N.D.N.Y. Nov. 18, 2015); *Shepherd v. Fischer*, No. 10–CV–1524, 2015 WL 1246049, at *13 (N.D.N.Y. Feb. 23, 2015) (rejecting as too conclusory or otherwise non-cognizable the assertion that superintendent defendants, "acting alone and/or in conjunction with each other[,] were aware of there being a systematic, gross inadequacies in training as well [as] supervision of subordinates in the use of force, and further failed to take corrective as well as preventative measures, which caused the violation of [the] plaintiff's rights." (first alteration in original) (internal quotation marks omitted)); *McKenna v. Wright*, No. 01–CV–6571, 2004 WL 102752, at *5 (S.D.N.Y. Jan. 21, 2004) (concluding that the "plaintiff's position that [the Department of Corrections and Community Supervision ("DOCCS") Commissioner] [was] personally liable for 'his failure to ensure' [an associate commissioner's sufficient resolution of the plaintiff's grievance], is merely an end-run around

the legal standard and fails to establish [the commissioner's] personal involvement," and concluding that, "[b]ecause [the] plaintiff makes no further allegations as to [the commissioner's] involvement, [the] plaintiff's claims against [the commissioner] are dismissed"); *Pacheco v. Fischer*, No. 09–CV–614, 2011 WL 831524, at *2 (N.D.N.Y. Jan. 19, 2011) ("[The] [p]laintiff's conclusory allegations that [the] defendant . . . failed to properly train staff and supervise employees at one of the many facilities in his [d]epartment [are] not enough to establish his personal involvement in the violations alleged by [the] plaintiff"), *adopted by* 2011 WL 830266 (N.D.N.Y. Mar. 3, 2011); *cf. Pettus v. Morgenthau*, 554 F.3d 293, 299–300 (2d Cir. 2009) (rejecting vague and conclusory allegations that a supervisor had failed to properly monitor the actions of subordinate employees where the complaint alleged that the DOCCS commissioner was responsible for "the hiring, practices, policies, customs, screening, training, supervising, controlling and disciplining of DOCCS employees" (internal quotation marks omitted)). Here, Plaintiff has made no factual connection between Ferrara's training and supervision and the alleged assault by Henderson. The allegations that Ferrara "failed to properly train and supervise" Henderson, (Am. Compl. at 6 ¶ 20), that Ferrara "encouraged misconduct under this authority by not enforcing his policies and customs," (*id.* at 6 ¶ 23), and that Ferrara's "failure to train . . . enabled his employees to not follow their own custom's and polices," (*id.* at 6 ¶ 21), are too conclusory to pass muster.

Plaintiff also suggests Ferrara had knowledge of Henderson's prior use of excessive force by alleging that there was a "wide spread of [sic] civil complaints and lawsuits alleging excessive force and police misconduct," (*id.* at 6 ¶ 21), and that Ferrara "applaud[ed] and promo[ed]" Henderson even after he "killed a man using his service gun while on duty after the deceased was *alleged* to have lunged with a knife," (*id.* at 6 ¶ 22). This is insufficient to make

14

out a claim that Ferrara was "deliberate[ly] indifferen[t]" to Plaintiff's rights by "failing to act on information indicating that unconstitutional acts were occurring." *Grullon*, 720 F.3d at 139 (italics and internal quotation marks omitted). Plaintiff provides no detail of these other complaints, such as when they were filed and whether the alleged misconduct was similar, nor does he suggest that Ferrara himself actually had information about these lawsuits. *Guillory v. Cuomo*, No. 14-CV-0971, 2014 WL 11173632, at *4 (N.D.N.Y. Dec. 2, 2014) (dismissing claim for lack of personal involvement where "[the p]laintiff cite[d] to his four prior lawsuits but d[id] not allege how any defendant [named]. . . had any involvement or any knowledge of any of the incidents described in any of those lawsuits"). The Supreme Court has made clear that such, "conclusory . . . allegations" are "disentitle[d] . . . to the presumption of truth." *Iqbal*, 556 U.S. at 681; *see also Shepherd*, 2015 WL 1246049, at *13 (rejecting as "appear[ing] to assert a non-cognizable constitutional claim or . . . [as] vague and conclusory" certain claims against the defendant where the plaintiff alleged that he "[was] aware" of certain problems at a DOCCS facility (internal quotation marks omitted)), *adopted by* 2015 WL 1275298 (N.D.N.Y. Mar. 18, 2015); *Guillory*, 2014 WL 11173632, at *4 ("The mere fact that other incidents . . . may have occurred . . . does not mean that the supervisory defendants were on notice of them, that they tolerated staff assaults on inmates, or that they were otherwise personally involved in the violation that forms the basis of [the] plaintiff's excessive-force claim."); *Vann v. Fischer*, No. 11-CV-1958, 2012 WL 2384428, at *6 (S.D.N.Y. June 21, 2012) (dismissing claims against DOCCS Commissioner for lack of personal involvement where the plaintiff merely alleged that the Commissioner "ha[d] knowledge of actions taken" (first alteration in original) (internal quotation marks omitted)); *LaPerre v. Cty. of Nassau*, No. 08-CV-1642, 2009 WL 10670335, at *4 (E.D.N.Y. Nov. 13, 2009), (dismissing claim for lack of personal involvement where the

plaintiff merely alleged the defendants had knowledge from "reports, appeals, grievance [sic], letters, tort claims and [§] 1983 federal civil rights claims," because "such conclusory allegations are wholly insufficient to satisfy the personal involvement" (internal quotation marks omitted), *adopted by* 2010 WL 9093240 (E.D.N.Y. Jan. 12, 2010), *aff'd*, 459 F. App'x 28 (2d Cir. 2012). Accordingly, "Plaintiff's allegations [that] . . . posit without explanation that incidents of officers' excessive use of force were known to [Ferrara] . . . cannot make out a claim of personal involvement." *Samuels*, 168 F. Supp. 3d at 636–37.

Plaintiff also alleges that Ferrara "encouraged misconduct . . . by not enforcing his polices and customs," (Am. Compl. at 6 ¶ 23), potentially implicating the third *Colon* factor, which requires a defendant "created a policy or custom under which unconstitutional practices occurred," *Grullon*, 720 F.3d at 139 (italics and internal quotation marks omitted). However, Plaintiff's allegations that Ferrara somehow encouraged misconduct are conclusory and devoid of any details as to how Ferrara created such a policy or custom of ignoring proper procedures. *See Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *12 (S.D.N.Y. Mar. 9, 2017) (dismissing conclusory allegation of supervisor liability). While Plaintiff uses the phrase "policy and custom"—i.e. language that largely mirrors the wording of one of the *Colon* prongs—in his Amended Complaint, the law has long been that "merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard." *Dotson*, 2012 WL 996997, at *6; *see also Samuels*, 168 F. Supp. 3d at 636–37 (noting that allegations that "attribute conduct to one or more of [the defendants] that largely mirrors—or is at least very similar [to]—the wording of one of the *Colon* prongs without further factual development . . . cannot make out a claim of personal involvement").

Moreover, Ferrara cannot be held personally liable for constitutional violations merely

16

"because he was in a high position of authority" at the City of Newburgh Police Department. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (affirming summary judgment in favor of the Commissioner of the New York Department of Correctional Services); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended*, (Feb. 24, 2016) (explaining that "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority" (internal quotation marks omitted)). "Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted). Personal involvement requires "a showing of more than the linkage in the . . . chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (same). The Court therefore grants the Motion to Dismiss as to Ferrara.[7]

---

[7] Even if Plaintiff had alleged Ferrara's personal involvement, Plaintiff's Fourteenth Amendment claim would fail for the same reasons explained in the Court's prior opinion. *Gantt*, 2017 WL 1192889, at *10. Plaintiff's claim that Defendants "fail[ed] to perform their official duties," (Am. Compl. at 1 ¶ 1), under the Fourteenth Amendment appears to hinge on a violation of his substantive due process right to bodily integrity, a right recognized by the courts. *Id.* However, "Plaintiff's allegations are far different than those found by the Second Circuit to fit within the narrow class of cases where governmental conduct is found to be a state-created danger," *id.* at *12, nor has Plaintiff demonstrated "conscience-shocking behavior in this case," *id.* at *13. "Accordingly, Plaintiff has failed to demonstrate that Defendants violated his constitutional right to bodily integrity, and the Court grants Defendants' Motion To Dismiss on this ground." *Id.* at *13.

It is unclear if Plaintiff intended to raise a state law negligence claim in the Amended Complaint. (*See* Am. Compl. at 8 ¶ 31 (alleging Ferrara "owed a duty to Plaintiff . . ."); *id.* at 1 ¶ 2 ("Plaintiff brings this action . . . [under] the common law").) Because Plaintiff still has not alleged that he filed a notice of claim, his claims for negligence under state law are dismissed for the same reasons given in the prior Opinion. *Gantt*, 2017 WL 1192889, at *9.

Additionally, to the extent Plaintiff raises an Eighth Amendment claim, that is also dismissed for failure to state a claim for the same reasons explained in the Court's prior Opinion. *Id.* at *13 n.14. Because "the actions complained of did not occur while Plaintiff was incarcerated and accordingly, the Eighth Amendment is inapplicable." *Id.*

2. Excessive Force Claims Against Defendant Henderson

Defendants also contend that Plaintiff's claim for excessive force against Henderson should be dismissed. (Defs.' Mem. 7–8.)[8] Plaintiff's sole allegation of excessive force is against Defendant Henderson for "straddling, . . . shak[ing,] and str[iking] Plaintiff in the facial area when Plaintiff was on the ground unconscious." (Am. Compl. at 4 ¶ 18.)

As the Court explained in the prior Opinion, *see Gantt*, 2017 WL 1192889, at *15, the Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest. *See Graham v. Connor,* 490 U.S. 386, 388, 391–95 (1989). In this context, the question is whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. An officer's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995). As to the substance of such a claim, "'[n]ot every push or shove'" is excessive, *Graham,* 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), and "de minimis uses of force generally do not suffice to state a constitutional claim," *Griffin*, 193 F.3d at 92 (italics omitted).

In reviewing such a claim, the Court considers "the totality of the circumstances, . . . including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others[,] and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161,

---

[8] Oddly, Defendants suggest the Fourth Amendment excessive force claim against Henderson "w[as] dismissed with prejudice." (Defs.' Mem. 7.) However, the Court's prior opinion denied Defendants' first Motion to Dismiss the excessive force claims, *see Gantt*, 2017 WL 1192889, at *16, and that claim was not subsequently dismissed with prejudice for failure to prosecute, (*see* Dkt. No. 67 (only "dismissing those claims previously dismissed without prejudice . . . with prejudice)). Plaintiff aptly points this fact out in his opposition papers. (Pl.'s Mem. 4.)

18

165 (2d Cir. 2000). Plaintiff's Complaint asserts that Defendant Henderson assaulted Plaintiff "when [P]laintiff was on the ground unconscious." (Am. Compl. at 4 ¶ 18.) Interpreting the allegations in the light most favorable to Plaintiff, *see Gonzalez*, 2014 WL 2475893, at *12, Plaintiff has stated a plausible claim that Defendant Henderson's actions were not objectively reasonable, as Plaintiff could not have "posed an immediate threat to the safety of others" and was not "actively resisting arrest" while unconscious. *Sullivan*, 255 F.3d at 165. Regardless of whether Plaintiff's allegations of excessive force may be "weak" or "thin," *Griffin*, 193 F.3d at 91, Plaintiff plausibly states a claim that Defendant Henderson acted unlawfully, *Iqbal,* 556 U.S. at 678, and therefore Defendants' Motion To Dismiss the excessive force claim against Defendant Henderson is again denied.

### 3. State Law Claims

Because the Court has not dismissed all of the federal claims, the Court will retain subject matter jurisdiction over the state claims.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss the claims against Defendant Ferrara. With the exception of the excessive force claim against Defendant Henderson, the Court grants Defendants' Motion To Dismiss the other federal claims against Henderson. Because Plaintiff has already been given an opportunity to amend his Complaint, (*see* Dkt. No. 70), the dismissed claims are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks

omitted)).

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and terminate the pending motion. (Dkt. No. 70.)

The Court will hold a status conference on November 6, 2018 at 3:00 p.m. The Parties should be prepared to discuss a case management plan at the conference.

SO ORDERED.

Dated: September 27, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE